226 F.2d 936
 Thomas SAVAGE, Elizabeth Z. Savage, Nathan P. Malcolm, Elsie Malcolm, J. E. Polkinghorne, Appellants,
v.
IOWA DEVELOPMENT COMPANY, a corporation, Chicago Great Western Railway Company of Minnesota, a corporation, Town of Inver Grove and Bryan D. McGroarty, Albert Fisher and Charles Boche, as Members of the Board of Supervisors of the Town of Inver Grove, Dakota County, Minnesota, Appellees.
 No. 15363.
 United States Court of Appeals Eighth Circuit.
 November 3, 1955.
 
 John G. Robertson, St. Paul, Minn. (Oppenheimer, Hodgson, Brown, Baer & Wolff, and R. F. Leach, St. Paul, Minn., were with him on the brief), for appellants.
 Lawrence L. Lenertz, So. St. Paul, Minn., for appellees Town of Inver Grove and the supervisors.
 Vance B. Grannis, So. St. Paul, Minn. (Grannis & Grannis, So. St. Paul, Minn., were with him on the brief), for appellees, Chicago Great Western Ry. Co. and Iowa Development Co.
 Before STONE, WOODROUGH and VOGEL, Circuit Judges.
 WOODROUGH, Circuit Judge.
 
 
 1
 The appellants here are the owners respectively of a nine acre tract of land, a 20 acre tract and a 26 acre tract, with improvements, in the town of Inver Grove, Dakota County, Minnesota. They have taken this appeal to reverse a judgment which dismissed their suit to enjoin release of zoning restrictions from defendants' neighboring property. The suit was brought by them against the Town, its supervisors, the Great Western Railroad and its wholly owned subsidiary, Iowa Development Company, and the dismissal was on the ground that their complaint failed to state a claim upon which relief prayed for could be granted.
 
 
 2
 It appeared from the complaint that under a zoning ordinance adopted by the Town in June, 1951, the lands of appellants and a certain large tract of about 600 acres within the Town belonging to the appellee development company to which some of appellants' lands are adjacent were classified as agricultural but on petition of the railway company and the development company after notice and public hearing, the classification of the development company's land was changed to industrial. It was alleged in the complaint herein that the development company plans and intends to sell its lands for industrial development and that the railroad company plans and intends to construct a spur across the reclassified lands in aid thereof.
 
 
 3
 Allegations were also set forth in the complaint that the amendments to the zoning ordinance under which the Board of Supervisors made the change in classification of defendants' lands were null and void and deprived the plaintiffs of their property without due process of law, denied them equal protection of the laws and constituted class and special legislation in violation of Amendment 14 to the United States Constitution and section 33, Article IV of the Minnesota Constitution, M.S.A.; that no plan for development under the re-classification was presented to the Town Board and except for possible increase in property tax revenues, no reasons were advanced by said Town Board for such re-classification; that the amendments were made without consideration of or relation to the public health, comfort, safety and welfare of the present and future inhabitants of the township and represented a special favor to the development company and the railroad and were not based on any change of character of the property involved or of circumstances existing at the time of the original zoning ordinance; that the amendments are unreasonable, arbitrary, capricious and discriminatory in their effect upon the plaintiffs and the change in classification created unlawful haphazard zoning in its application and was in derogation of the plan adopted by said original zoning ordinance; that as a result of the adoption of the amendments to the zoning ordinance the value of plaintiffs' property has been greatly reduced; that plaintiffs were without adequate remedy at law. There was no further specification of any facts to constitute an actionable claim for plaintiffs.
 
 
 4
 A copy of the original zoning ordinance of 1951 was attached to the complaint showing that the regulations thereof were "made in accordance with the comprehensive plan designed and enacted for the purpose of promoting the health, morals, order, prosperity, or welfare of the present and future inhabitants" and many other specified purposes including "protection of both urban and non-urban development." The ordinance included a requirement that when the owners of 75 percent or more of a certain area in the Town petitioned for a change of the regulations applicable to the area, a statement of acquiescence and consent of the owners of two-thirds of the several parcels of real estate situated within 500 feet of land to be affected should accompany the petition.
 
 
 5
 A copy of the proceedings of the Town Board in April, 1954, was also attached to the complaint showing that the Board after notice and public hearing amended the last mentioned requirements of the ordinance by adding a proviso to the effect that when owners of 100 percent of the area to be rezoned petition for such rezoning, the Town Board may waive the above requirement of acquiescence and consent.
 
 
 6
 The complaint also included a copy of defendants' petition to change the classification of their land, owned 100 percent by them, from agricultural to industrial, but the proceedings making the change were not set forth in detail. The complaint showed, however, that at least one of the plaintiffs was present at the hearing of the petition by the Board on December 8, 1954, for the purpose of objecting to the petition and did object on the grounds "set forth in the Complaint" and "upon other grounds." The complaint had attached to it as an exhibit the map of Inver Grove Township drawn from official records showing that it lies on the south side of the Mississippi River and across the river from the congested business district of the large city of St. Paul; that it contains many thousand acres used mostly for agricultural purposes and is very sparsely built upon. It shows that the lands owned by the plaintiffs lie in the extreme southeastern corner of the township, some touching the south boundary and some the river which forms the east boundary, and all of them in close proximity to those boundaries in that area. The map did not show any of the area across the township line to the south.
 
 
 7
 The prayer of the complaint was for injunction prohibiting the Town Board from enforcing the amendments to the zoning ordinance including the reclassification of defendants' land, prohibiting the development company from disposing of or developing its described tract of land for industrial purposes and prohibiting the railroad from constructing a spur track or extension of its right of way across the same, and prohibiting all defendants from enforcing or acting under said purported amendments to the zoning ordinance.
 
 
 8
 The complaint was filed on January 13, 1955, and on February 2, 1955, the defendant Town moved for dismissal for lack of jurisdiction of the subject matter appearing upon the face of the complaint and "because the complaint fails to state a claim against this defendant upon which relief can be granted." On February 7, 1955, the defendant development company and the railway company joined in a motion for dismissal on the same grounds and because no federal question was involved.
 
 
 9
 On March 7, 1955, before hearing was had on the motions, the plaintiffs filed answers to interrogatories to the effect, i. a., that plaintiff Savage had bought his nine acre tract in 1940 for $3,500.00 and had expended some $46,000.00 thereon in improvements. That in 1942 the United States had purchased an easement over seven acres of it "for use in connection with the conveyance of water from a well constructed on [the] property." In 1954 an option for a similar easement was granted to Ranney Water Company. Fifteen hundred dollars was paid for the easement of 1942 and $45,000.00 will be received if the option of 1954 is exercised. Plaintiff Savage valued his nine acres with improvements at $145,000.00 ($100,000 plus $45,000 potential value of the easement) as of February, 1953; at $145,000.00 as of February, 1954, and at $95,000.00 ($50,000 plus $45,000 potential from easement) in 1955.
 
 
 10
 That plaintiffs Malcolm had bought their 20-acre tract in 1908 for $1,992.00 and had spent some $8,850.00 for improvements. They were offered $1,200.00 for 2½ acres in 1952. They stated that the market values were $40,000.00 as of February, 1953. $40,000.00 as of February, 1954, and $35,000.00 as of February, 1955.
 
 
 11
 That plaintiff Polkinghorne bought his 26-acre tract in 1953 for $27,500.00 and spent $2,860.00 for improvements during 1954. He put the market values at $50,000.00 as of February, 1953, at $50,000.00 as of 1954, and at $40,000.00 as of 1955.
 
 
 12
 The record does not show that the defendants filed any formal motion to advance the case on the court's docket but the date on which the motions to dismiss were scheduled to be heard was at a special term of the court on February 28, 1955. When they were not heard on that date, an affidavit was filed on March 3, 1955, by two members of the Town Board "on behalf of the Town" which recited that it was made as requested by resolution of the Town Board to respectfully petition the court to decide the matter as quickly as possible because of the "vital importance to the citizens of their Town, that the matter be disposed of with dispatch" and on the same day Vance B. Grannis, an attorney for the railway and the development companies also filed his own affidavit which recited that it was made "respectfully to urge the Court that an early disposition of the motion pending herein to dismiss this action is of great importance to the defendants herein."
 
 
 13
 Copies of the affidavits were delivered to counsel for plaintiffs at the time of their filing and no objection was made to their consideration by the court for the purpose for which they were filed.
 
 
 14
 The affidavit of the Town Board members stated that the Town of Rosemount adjoined the Town of Inver Grove on the south and that lands in the Town of Rosemount bordering on Inver Grove were zoned industrial and a large oil refinery was nearly completed thereon; that other industries will locate in the Rosemount industrial area; that it became absolutely necessary for the welfare of all the citizens of Inver Grove to rezone industrial an area contiguous to the Rosemount industrial area so that industry could flow into their township, otherwise Inver Grove would have all of the problems of big industry, particularly the problem of a large influx of population which affiants expect will locate near the Rosemount industrial area but in their town as being nearer St. Paul, with all the increased burdens of tax demands therefrom without any of the advantages of having taxable industries in its area to help meet the costs of solving such problems; that affiants had been assured that a 15 million dollar plant would locate in their Town in the rezoned area at issue in this case if such plant could be constructed within a short time but may not locate in the area if there is any delay in allowing such construction to start because of this law suit; that the affidavit is thus made for the purpose of calling the court's attention to some of the reasons for a speedy determination of this lawsuit.
 
 
 15
 The affidavit of Mr. Grannis filed at the same time and for the same purpose as that for the Town Board contained a map of the lands adjoining the reclassified lands here involved lying to the south in Rosemount Township including the lands immediately adjoining the plaintiffs' lands owned by the Great Northern Oil Company which has built or is building thereon the 20 million dollar refinery referred to in the Town's affidavit. The map shows an area of thousands of acres abutting upon plaintiffs' lands that have been zoned industrial in Rosemount Township. The affidavit details something of the history of the acquisition of lands in Inver Grove and Rosemount Townships by the defendant companies from and after 1951 to promote industries in the railroad's territory and it contains statements to the effect that the land so acquired is ideally suited for major industrial purposes and that it will retard if not prevent large industrial enterprises from coming into the state if it is not made available for industrial purposes. It is also stated that an option had been granted to St. Paul Ammonia Products Company, Inc. to purchase 250 acres in the Inver Grove Township upon which the products company intended to construct a 15 million dollar ammonia plant if the land were zoned industrial.
 
 
 16
 The special term of the court was continued and the motions for dismissal were set for hearing on March 7, 1955, and were heard on that day.
 
 
 17
 On the oral argument of the motion to dismiss, counsel for defendants presented some argument based on the map attached to the Grannis affidavit and made some reference to the 20 million dollar oil refinery. No objection was made at the time though counsel for plaintiffs later "registered an objection to the use of the affidavits in considering the motions", stating they were not affidavits in support of the motions.
 
 
 18
 The decision and order dismissing the action "for the reason that the complaint does not state facts on which the relief prayed for can be granted" was accompanied by the Court's written opinion fully disclosing the reasons and authorities on which the decision was based. Savage v. Iowa Development Co., D.C., 130 F.Supp. 42. The court did not question that if an actionable claim were stated, it would be of federal cognizance. Dennis v. Village of Tonka Bay, 8 Cir., 151 F.2d 411.
 
 
 19
 The appellants contend for reversal (1) that the allegations of the complaint "taken collectively" were sufficient and (2) that the court erred in considering defendants' affidavits on the motion to dismiss.
 
 
 20
 The complaint assumed to charge illegality in the release of the zoning restrictions upon the defendants' lands solely in terms of vague and indefinite conclusions of law. It entirely omitted to state any concrete facts constituting a tangible wrong threatened to be done them or their property by defendants and set forth no facts to indicate any way in which they would suffer damage from the Town's action. The map of Inver Grove Township attached to the complaint shows defendants' 600 acre tract of land outside of but in reasonable proximity to the large city, in a very sparsely built upon area, intersected by railroad and highways and abutting upon the navigable river and to appearances suitable for industrial purposes. Search of the complaint discloses no facts alleged to overcome the presumption of validity of the Town Board's action and there is no allegation that the officers failed to comply with the statutory requirements of procedure in amending the zoning ordinance and changing the classification of defendants' land.
 
 
 21
 Likewise, as to anticipated damage to plaintiffs' lands the complaint alleges no facts to in any wise connect the Town's action concerning the defendants' land with any detriment to plaintiffs or their land. The complaint does not indicate any element of usefulness or value in the plaintiffs' lands which it is charged will be affected by the Town's action. The plaintiffs remain in full use and enjoyment of them and no fact is alleged in the complaint to indicate any interruption of that situation.
 
 
 22
 Furthermore, it was brought to the court's attention through defendants' affidavits that the map attached to plaintiffs' complaint does not present a true picture of the location of plaintiffs' properties in respect to lands classed industrial. No industries are shown in their vicinity on that map whereas in truth the plaintiffs' lands are contiguous to industrial lands. Great Northern Oil Company has erected a refinery of vast proportions upon land adjacent to them on the south and the oil company's land is a part of a connected area in Rosemount Township of thousands of acres which are zoned as industrial and are adjacent to defendants' reclassified land in Inver Grove Township.
 
 
 23
 The court also had before it the answers plaintiffs made to interrogatories showing that plaintiffs' lands had enormously increased in value.
 
 
 24
 In the situation so presented it appeared to the court that it was incumbent on the plaintiffs to allege facts in their complaint constituting a discernible and recognizable cause of action and that they had failed to do so. It is obvious that the pendency of the plaintiffs' action was of a far reaching consequence to very great business interests and many persons and the court found no injustice to plaintiffs in requiring them to simply and informally plead the facts constituting a cause of action if they have one.
 
 
 25
 Appellants reply upon our decisions in Dennis v. Village of Tonka Bay, 8 Cir., 151 F.2d 411, and Leimer v. State Mutual Life Assurance Co., 8 Cir., 108 F.2d 302, and the decision in Wilcox v. City of Pittsburgh, 3 Cir., 121 F.2d 835, to justify their omission of any facts constituting the alleged illegality of the zoning regulation they attack and of any facts relating such undefined illegality to their anticipated damage. But, as determined by the District Court, the cases do not support their position.
 
 
 26
 In the Village of Tonka Bay case the plaintiffs complained that they had been engaged in business using a narrow strip of shore land on Lake Minnetonka within the limits of the village for renting boats and the Village sought to enforce a zoning ordinance which classified the strip as residence property and prohibited its use for any other purpose; they alleged that the land was valueless and useless for residential purposes and the ordinance was arbitrary and unreasonable and violative of the constitutional provisions. We found in that situation no failure to state facts constituting a claim in the complaint.
 
 
 27
 Similarly, in the Leimer case the plaintiff's complaint stated a plain and intelligible claim that her husband was insured by defendant under four policies payable to her and her two daughters which were in full force at the time of his death so that she became entitled to one-half the proceeds; that she had furnished proof of death and demanded payment of her share which was refused. It is observed in our opinion that "No matter how improbable it may be that she can prove her claim, she is entitled to an opportunity to make the attempt, and is not required to accept as final a determination of her rights based upon inferences drawn in favor of defendant from her amended complaint. It will not do to circumvent a determination of a suit upon the merits by accepting an assertion that the claim stated in the complaint is groundless." [108 F.2d 306]
 
 
 28
 So in the Wilcox case. There the zoning authorities authorized the owner of a six acre tract within a high class residential area to construct a very large apartment house thereon and the owners of the residential property sought injunction. Their complaint set out in much detail the facts upon which they claimed illegality in the zoning regulation and irreparable injury to themselves.
 
 
 29
 We find no error in the court's refusal to permit the plaintiffs to proceed in this case without a statement of facts in their complaint sufficient to make out a claim upon which issue could be joined and tried and relief granted or denied as might be.
 
 
 30
 The contention urged for appellants that the court erred in giving such consideration as it did give to defendants' affidavits appears to be without merit. The affidavits were brought to the court's attention without objection for the apparently proper purpose of showing the need for speedy hearing of the case. They were not used or considered by the court to rebut any allegation of fact in the complaint. The only facts contained in them to which the court paid any attention when ruling on the motions were that large tracts of land classified as industrial abutted on plaintiffs' land to the south and that an immense oil refinery plant was being constructed thereon. These physical facts are of such common knowledge in St. Paul where the court sat that they might well have received judicial notice. There has been no thought or suggestion either in the District Court or in this court that they can be contradicted. Having been properly brought to the Court's notice, it was not necessary for that court to pretend to be ignorant of them. They tend merely to make it stand out more clearly that it was obligatory on the plaintiffs to state the facts on which they were asserting that they had an actionable claim.
 
 
 31
 We note finally that, although the order of the court sustained defendants' motions, the court did not indicate that there was any restriction upon the right of the plaintiffs to amend their complaint by setting forth facts to supply the omissions found to exist in it. But the omissions were evidently made purposefully, as the plaintiffs promptly, after decision against them, filed their "election to stand on the complaint filed herein."
 
 
 32
 That complaint the court determined did not state facts on which relief could be granted and it is held that the ruling and judgment are not erroneous.
 
 
 33
 Affirmed.
 
 
 34
 STONE, Circuit Judge, concurs in the result.